## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

STANLEY NELSON,                                                PETITIONER
ADC #124583

v.                              No. 4:20-CV-00175-JM-JTR

DEXTER PAYNE, Director,
Arkansas Division of Correction                                RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent
to United States District Judge James M. Moody, Jr.  You may file written objections
to all or part of this Recommendation. If you do so, those objections must: (1)
specifically explain the factual and/or legal basis for your objection; and (2) be
received by the Clerk of this Court within fourteen (14) days of this
Recommendation.  By not objecting, you may waive the right to appeal questions of
fact.

### I.  Introduction

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus
filed by Petitioner Stanley Nelson ("Nelson"), a prisoner in the custody of the
Arkansas Department of Correction ("ADC"). *Doc. 1*.  Before addressing the merits
of Nelson's habeas claims, it is important to understand the evidence introduced

during his four day jury trial, which resulted in him being convicted of second-degree murder and first-degree battery.

### A.    Overview of Events Leading to Nelson's Use of Deadly Force

On August 14, 2013, Nelson and his cousin, Courtney Marshall ("Marshall"), attended a birthday party for Sedrick Green ("Green") at a private residence in Little Rock. Nelson, Marshall, Green, and Latravis Morant ("Morant"), Green's brother, decided to shoot dice. As sometimes happens in such games, a fight erupted. Marshall was the initial aggressor and shoved Green, who responded by punching Marshall in the face.

Johnathan Adams ("Adams"), who was watching the dice game with several other male partygoers, grabbed Marshall from behind and tried to pull him away from Green. Several witnesses testified that, as Adams restrained Marshall, Nelson took possession of a handgun in the waistband of Marshall's pants.[1] Morant then punched Marshall in the face, staggering him. Green grabbed Marshall and pushed him to the floor, got on top of him, and began punching him in the face. According to the testimony of several witnesses, Green and Morant were both large, muscular men who each weighed around 300 pounds. Doc. *8-2 at 110, 124, 132, 180*.

---

[1] Nelson's girlfriend, Quante Blakely ("Blakely"), who also attended the party, testified at trial that, when Nelson removed the gun from Marshall's waistband, Nelson said words to the effect of "I don't want anyone shot." *Doc. 8-3 at 222–223*. Adams testified Nelson took the gun because Marshall was reaching for it, and Nelson said: "Courtney, there's going to be none of that." *Doc. 8-2 at 130*.

As Green continued to punch Marshall, Nelson shot Green in his arm and leg. According to Nelson's girlfriend, Blakely, at the time Nelson shot Green, Morant was standing near Nelson and yelled "we E.T.O. up in here", which she construed as Morant's way of stating his intentions to attack and injure Nelson.[2] After shooting Green, Nelson shot Morant in the stomach. Morant died at the hospital, but Green survived.

### B.    Nelson's Jury Trial

On October 21, 2014, Nelson's four day jury trial began. Pulaski County Circuit Judge Wendell Griffen ("Judge Griffen") was the presiding judge. The prosecution asked the jury to return a verdict of first or second degree murder against Nelson for killing Morant, and a verdict of first degree battery against Nelson for shooting Green.

After hearing eyewitness testimony from Adams, Green, Jernitha Moore ("Moore"), Darrius Morant,[3] and Blakely, the jury convicted Nelson of second-degree murder, and first-degree battery. The jury recommended Nelson be sentenced to: (1) 24 years for second-degree murder, with a 10-year enhancement

---

[2] Green and Morant grew up together in Elaine, Arkansas. Blakely was Green's former girlfriend and the mother of at least one of his children. As a result, she knew that "E.T.O." stood for "Elaine Taking Over," and was a phrase or letters sometimes yelled by those from Elaine as their battle cry before or during a fight. Blakely also testified that, at some point before Nelson shot Morant, he had tried to punch Nelson, but the punch did *not* land. *Doc. 8-3 at 224.*

[3] Darrius was the cousin of Latravis Morant.

for using a firearm to commit that crime, and a 1-year enhancement for committing the murder in the presence of a child; and (2) 5 years for first-degree battery, with a 5-year enhancement for using a firearm to commit that crime, and a 1-year enhancement for committing the crime in the presence of a child. Judge Griffen accepted and imposed these recommended sentences, which were ordered to be served *consecutively*. *Doc. 1 at 4-5*.

### C.    Nelson's Motion for a New Trial

On November 11, 2014, Nelson's trial counsel, David Cannon ("Mr. Cannon"), filed a Motion for a New Trial. In this Motion, he argued, among other things, that he proffered *erroneous jury instructions* on Nelson's "justification defense" and the court adopted and gave the proffered justification defense instruction on both the murder and battery charges.

It is undisputed that both of the justification defense instructions proffered by Mr. Cannon contained at least one error, but the issue of whether that error was prejudicial is hotly contested. It is also undisputed that Judge Griffen accepted and gave both of Mr. Cannon's "justification defense" instructions to the jury on the murder and battery charges.

### 1. Arkansas Model Criminal Instruction 705 – Justification as a Defense[4]

AMCI 705 requires that, for justification to be a defense for using deadly force, "in defense of another person," there must be evidence that the perpetrator "was committing or about to commit battery in the second degree with force or violence [on another person]; or [the defendant] reasonably believed that [the perpetrator] was using or was about to use unlawful deadly physical force [on another person]." *AMI Crim.2d 705.* This instruction, with appropriate modifications, is also used when a defendant contends he used deadly force "in defense of himself." There was *no evidence* that Green or Morant were armed with a gun, knife, or other dangerous weapon when Nelson shot them. Thus, to prevail on his justification defense, Nelson was required to show that Green and Morant were committing or about to commit "battery in the second degree."[5]

---

[4] The notes to this instruction make it clear that a judge should select and use the appropriate bracketed language, depending on whether the defendant is arguing that he was justified in using deadly force *to defend himself* (self-defense) or he was justified in using deadly force *to defend another person*. Arkansas Model Criminal Instruction 705 ("AMCI 705").

[5] To prevail on his justification defense for shooting and wounding Green, Nelson was required to show that he "reasonably believed that [Green] was committing or about to commit battery in the second degree [*against Marshall*] with force or violence." To prevail on his justification defense for shooting and killing Morant, Nelson was required to show that he "reasonably believed that [Morant] was committing or about to commit battery in the second degree [*against Nelson*] with force or violence."

### 2. Mr. Cannon's AMCI 705 Justification Instructions On Nelson's Use of Deadly Force Against Green and Morant

During the initial jury instructions conference, which took place after the prosecution rested its case, Mr. Cannon argued that Green and Morant were acting "in concert" to commit second degree battery on Marshall. According to Mr. Cannon, this was enough to support Nelson's reasonable belief that Morant was "committing or about to commit battery in the second degree" against Marshall *and* Nelson. *Doc. 8-3, at 107–115.* Judge Griffen rejected this argument because *there was no testimony or other evidence that, when Nelson shot Morant, he was "committing or about to commit" second degree battery on Marshall.*[6] *Id. at 115–120.* Rather, all of the evidence established that: (1) seconds *before* Nelson shot Morant, *Green* was on top of the pinned Marshall, punching him in the face; and (2) at the time Nelson shot Morant, he was standing and watching Green beat up Marshall.

In the final jury instruction conference, Mr. Cannon submitted two separate instructions on justification as a defense: One instruction covered Nelson's justification for using deadly force against Green to defend Marshall from Green's commission of second degree battery on Marshall. The other instruction covered

---

[6] Earlier in the fight Morant threw one punch that hit Marshall in the face. Green then threw Marshall down, pinned him, and began repeatedly punching Marshall in the face. While that was taking place, Morant, along with other partygoers, were *standing and watching* Green use his fists to beat Marshall.

Nelson's justification for using deadly force against Morant to defend himself from Morant, who Nelson reasonably believed was "about to commit battery in the second degree" *on Nelson*. A comparison of those two instructions makes this distinction clear.

### a. Mr. Cannon's One Word Mistake in Defining "Battery in the Second Degree" in Both of his Justification Instructions

Mr. Cannon's AMCI 705 instruction *on the first degree battery charge* defined second degree battery as follows: "Battery in the second degree means Sedrick Green with the purpose of causing *serious* physical injury to *Courtney Marshall* causes serious physical injury to *Courtney Marshall*." *Doc. 8-7 at 74* (emphasis added). Mr. Cannon's AMCI 705 instruction *on the murder charges* defined second degree battery as follows: "Battery in the second degree means Latravis Morant with the purpose of causing *serious* physical injury to *Stanley Nelson* caused serious physical injury to *Stanley Nelson*." *Doc. 8-7 at 76–78* (emphasis added).

### b. The Correct Definition of "Battery in the Second Degree" in AMCI 705

AMCI 705 defines second degree battery to mean the perpetrator "with the purpose of causing *physical injury* [to the victim] causes *serious physical injury* [to the victim].

The AMCI 705 jury instruction Mr. Cannon proffered and Judge Griffen accepted and gave to the jury on Nelson's justification defense to the first degree battery charge contained *one erroneous word* which is italicized below:

> "Battery in the second degree" means Sedrick Green with the purpose of causing *serious* physical injury to Courtney Marshall causes serious physical injury to Courtney Marshall.

*Doc. 8-7 at 72–74* (emphasis added).

Similarly, the AMCI 705 jury instruction Mr. Cannon proffered and Judge Griffen accepted and gave to the jury on Nelson's justification defense to the murder charges contained *the same error*, which is italicized below:

> "Battery in the second degree" means Latravis Morant with the purpose of causing *serious* physical injury to Stanley Nelson causes serious physical injury to Stanley Nelson.

*Doc. 8-7 at 76–78*.

Finally, in later jury instructions, Judge Griffen correctly instructed the jury that: (1) "serious physical injury" is a "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ;" and (2) "physical injury" is an "impairment of physical condition or [the] infliction of substantial pain." Ark. Code Ann. § 5-1-102 (14)(A)–(B); (21).

### 3.  Judge Griffen Denies Nelson's Motion for New Trial

On November 19, 2014, Judge Griffen conducted a hearing on Nelson's Motion for a New Trial.  Six days later, on November 25, 2014, he denied the Motion.  With regard to Mr. Cannon's argument concerning his two identical one word mistakes in defining "battery in the second degree" in the AMCI 705 instructions, Judge Griffen concluded that "Nelson had failed to establish that the flawed instruction prejudiced him and thus he could not prevail" on the ineffective assistance of counsel claim.  *Doc. 1 at 5.*

### D.  Nelson's Direct Appeal

The same day Judge Griffen denied Nelson's Motion for New Trial, his new appellate lawyers, John Wesley Hall and Sarah Pourhosseini, filed a direct appeal of Nelson's conviction and sentence to the Arkansas Court of Appeals.  In his Appellant's Brief, Nelson's only ineffective assistance of counsel involved Mr. Cannon proffering the two erroneous jury instructions on justification as a defense, and then not objecting to Judge Griffen giving those instructions to the jury.[7]  In their Reply Brief, however, Nelson's appellate counsel conceded that Mr. Cannon's one word mistake in the justification instructions constituted reversible error only as

---

[7] In his direct appeal, Nelson made several other arguments for reversing his convictions. All of those other arguments were rejected by the Arkansas Court of Appeals and Nelson's habeas counsel elected not to raise them in Nelson's habeas Petition. Thus, the only legal argument for reversal made by Nelson in his direct appeal that is relevant to this habeas action is the ineffective assistance of counsel claims based on Mr. Cannon's submitting erroneous AMCI 705 justification as a defense instruction to Judge Griffen.

to the first degree battery charge and did *not* constitute reversable error in the context of the justification instruction on the murder charge. *Doc. 1 at 6.* However, as to the first degree battery charge, Nelson argued this mistake in the definition of "battery in the second degree" in the justification instruction constituted "structural error," which is always "prejudicial." *Doc. 1 at 6–7.*

On December 9, 2015, the Arkansas Court of Appeals affirmed Nelson's convictions and sentences for first degree battery and second degree murder. *Nelson v. State*, 477 S.W.3d 569 (Ark. App. 2015). The Court rejected Nelson's argument that the mistake in the justification instruction constituted "structural error." Because Nelson had not argued any other legal basis for prejudice, the Court held that his ineffective assistance of counsel claim against Mr. Cannon failed to demonstrate any prejudice under *Strickland*. Finally, because Nelson had abandoned his challenge to the alleged error in the justification instruction on the murder charge, the Court was not required to address that argument. *Id*. at 571-572.

On December 17, 2015, Nelson filed a Petition for Review in the Arkansas Supreme Court. On January 28, 2016, the Petition was denied. *Doc. 1 at 7.*

### E.    Nelson's Rule 37 Petition

On March 23, 2016, Nelson filed a Rule 37 Petition. His new attorneys, William James and Michael Kaiser, argued six separate claims of ineffective assistance of counsel:

10

1.     Mr. Cannon was constitutionally ineffective for submitting a flawed jury instruction on his justification defense to the first degree battery charge and Mr. Hall was constitutionally ineffective for not arguing that it resulted in Nelson suffering prejudice under *Strickland.*

2.     Mr. Cannon was constitutionally ineffective for advising Nelson not to testify at trial.

3.     Mr. Cannon was constitutionally ineffective for failing to introduce medical evidence of Marshall's injuries.

4.     Mr. Cannon was constitutionally ineffective for failing to convince Judge Griffen to allow him to cross-examine Green about prior acts of domestic violence.

5.     Mr. Cannon was constitutionally ineffective for failing to call certain witnesses to testify on behalf of Nelson during the sentencing phase of his trial.

6.     Mr. Cannon was constitutionally ineffective for failing to request, create, and submit a jury instruction on "imperfect self-defense," even though such an instruction in not contained in the AMCI.

*Doc. 9-1 at 24–33; 40-61; 65–90; 95–121.*

On September 28, 2017, and October 5, 2017, Judge Griffen conducted a Rule 37 evidentiary hearing. *Doc. 9-1 at 127-128.* On November 9, 2017, he entered an order denying Rule 37 relief. *Doc. 9-1 at 132–140.*

On November 13, 2017, Nelson filed a Motion to Reconsider because Judge Griffen had failed to rule on the ineffective assistance of counsel claim against Mr. Cannon and Mr. Hall which was stated in Claim 1. *Doc. 9-1 at 141–142.* Judge

Griffen did not rule on the Motion to Reconsider, which resulted in it being deemed denied. *Nelson v. State*, 566 S.W.3d 530, 534 (Ark. App. 2018).

Nelson filed a Notice of Appeal of Judge Griffen's adverse rulings. *Doc. 1 at 11*.

On December 5, 2018, the Arkansas Court of Appeals affirmed the denial of Rule 37 relief on Claims 2 through 6. *Nelson v. State*, 566 S.W.3d 530 (Ark. App. 2018). As to Claim 1, the Court held that Nelson's Motion to Reconsider was not sufficient to preserve the alleged error in the AMCI 705 jury instruction on justification as a defense to the first degree battery charge. *Id.* at 535.

On December 21, 2018, Nelson filed a Petition for Review with the Arkansas Supreme Court. On February 21, 2019, the Court denied the Petition.

### F.    Nelson's § 2254 Habeas Petition

On February 21, 2020, Nelson's new attorneys, Jordan Tinsley and Jason Files, filed the federal habeas Petition now before the Court. In that Petition, they asserted ten separate claims of constitutionally ineffective assistance of counsel:

Claim 1    Mr. Cannon was ineffective for submitting and stipulating to an erroneous justification instruction on the first degree battery charge, which contained the wrong elements for second degree battery.

Claim 2    Mr. Cannon was ineffective for submitting and stipulating to an erroneous justification instruction on the murder charges, which contained the wrong elements for second degree battery.

Claim 3      Mr. Cannon was ineffective for submitting and stipulating to an erroneous justification instruction on the murder charge which identified Nelson – not Marshall – as the victim of Morant's alleged second degree battery.

Claim 4      Mr. Cannon was ineffective for submitting and stipulating to an erroneous justification instruction on the murder charge which failed to state that Morant and Green were "acting in concert" in committing second degree battery on Marshall.

Claim 5      Mr. Cannon was ineffective for not eliciting testimony to explain the significance of Morant yelling "ETO" shortly before Nelson shot him.

Claim 6      Mr. Cannon was ineffective for failing to introduce medical records and testimony to establish the severity of Marshall's injury.

Claim 7      Mr. Cannon was ineffective for improperly advising Nelson not to testify at trial.

Claim 8      Mr. Cannon was ineffective for failing to introduce testimony that, before Nelson shot Green, Nelson was aware Green had committed acts of domestic violence.

Claim 9      Mr. Cannon was ineffective for failing to request a so-called "imperfect" self-defense jury instruction.

Claim 10     Mr. Cannon was ineffective for failing to move for directed verdict based on the prosecutions' failure to introduce sufficient evidence to support enhancing Nelson's sentences under the child enhancement statute; and Mr. James was ineffective for failing to raise this ineffective assistance of counsel claim in Nelson's Rule 37 proceeding.

*Doc. 1.*

13

On April 10, 2020, Respondent filed a Response arguing all of Nelson's habeas claims should be dismissed because they were either procedurally defaulted or reasonably adjudicated in state court. *Doc. 8*. On May 15, 2020, Nelson filed a Reply Brief. *Doc. 11*. Thus, the issues are now joined and ready for disposition.

For the following reasons, the Court recommends that Nelson's habeas Petition be GRANTED in part, and DENIED in part.

## II. Discussion

### A. Ineffective Assistance of Counsel Claims Related to Alleged Errors in the AMCI 705 Jury Instructions on Justification as a Defense Which Rendered Nelson's Conviction Unconstitutional (Claims 1, 2, 3, and 4)

Nelson brings four ineffective assistance claims related to errors in the AMCI 705 jury instructions on justification as a defense to the first degree battery and murder charges. Respondent Payne argues that *some* of these claims are procedurally defaulted. *Doc. 8 at 12–25*. Rather than engaging in the complex legal analysis of whether Nelson failed to raise and properly preserve those ineffective assistance of counsel claims, and then determining whether any of the procedurally defaulted claims can be saved under the *Martinez* exception, I have concluded it is more efficient to analyze and reject those claims on the merits.[8]

---

[8] *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Trussell v. Bowersox*, 447 F.3d 588, 590–91 (8th Cir. 2006) (because neither the statute of limitations nor procedural default presents a jurisdictional bar to federal habeas review, both issues can be bypassed "in the interest of judicial economy"); *Kemp v. Hobbs*, 2012

Habeas relief is rarely granted to a state prisoner based on an alleged jury instruction error. Because jury instructions are uniquely within the purview of state courts, their interpretation of those instructions are entitled to deference from federal courts. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (stating that a federal habeas court is not to "reexamine state-court determinations on state-law questions").

As a result, federal habeas relief is only available if the erroneous jury instructions contain "a fundamental defect" that caused a "complete miscarriage of justice," or an omission "inconsistent with rudimentary demands of a fair trial." *Louisell v. Dir. of Iowa Dept. of Corr.*, 178 F.3d 1019, 1022 (8th Cir. 1999) (citations omitted). A state habeas petitioner must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,'" but that it "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973).

To satisfy the requirements of due process, it is only necessary that state jury instructions make it clear that the prosecution must prove, beyond a reasonable doubt, every fact necessary to constitute the crime charged. *In re Winship*, 397 U.S.

WL 2505229 (E.D. Ark. June 28, 2012) (citing 28 U.S.C. § 2254(b)(2) and *McKinnon v. Lockhart*, 921 F,2d 830, 833 n.7 (8th Cir. 1990)) ("Where it is more efficient to do so, therefore, this Court may resolve [habeas] claims on the merits rather than navigating through a procedural-default thicket.").

358, 363 (1970). The instructions also must direct the jury to consider all of the evidence, "including the evidence going to self-defense," in deciding whether there was "a reasonable doubt about the sufficiency of the state's proof of the elements of the crime." *Martin v. Ohio*, 480 U.S. 228, 234 (1987).

Judge Griffen's instruction on justification, as a defense to the first degree battery charge, stated the following:

JUSTIFICATION – USE OF DEADLY PHYSICAL
FORCE IN DEFENSE OF A PERSON
AMCI 2nd 705

Stanley Nelson asserts a defense to the charge of battery in the first degree, that deadly physical force was necessary to defend himself or Courtney Marshall. This is a defense only if:

First: Stanley Nelson reasonably believed that Sedrick Green was committing or about to commit battery in the second degree, with force or violence; or Stanley Nelson reasonably believed that Sedrick Green was using or about to use unlawful deadly physical force; and

Second: Stanley Nelson only used such force which he reasonably believed to be necessary.

A person is not justified in using deadly physical force if he knows that the use of deadly physical force can be avoided with complete safety by retreating. However, he is not required to retreat if he is in his dwelling or on the curtilage surrounding the person's dwelling and was not the original aggressor.

Stanley Nelson, in asserting this defense, is required only to raise a reasonable doubt in your minds. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to the guilt of Stanley Nelson, then you must find him not guilty.

* * * *

16

"Battery in the second degree" means Sedrick Green with the purpose of causing serious physical injury to Courtney Marshall causes serious physical injury to Courtney Marshall.

*Doc. 8-7 at 72-74.*[9]

Judge Griffen's instruction on justification as a defense to the first or second degree murder charges stated the following:

AMCI 2nd 705

Stanley Nelson asserts a defense to the charges of murder in the first degree and murder in the second degree, that deadly physical force was necessary to defend himself or Courtney Marshall. This is a defense only if:

First: Stanley Nelson reasonably believed that Latravis Morant was committing or about to commit battery in the second degree, with force or violence; or Stanley Nelson reasonably believed that Latravis Morant was using or about to use unlawful deadly physical force; and

Second: Stanley Nelson only used such force which he reasonably believed to be necessary.

---

[9] As previously explained, the final paragraph of this instruction, which defines second degree battery, should have stated, "Sedrick Green with the purpose of causing physical injury [not serious physical injury] to Courtney Marshall causes serious physical injury to Courtney Marshall." The preamble to this instruction broadly states that Nelson is asserting a defense to the first degree battery charge because using "deadly physical force [against Green] was necessary to defend himself [Nelson] or Courtney Marshall." However, there is *no evidence* that Green ever used any physical force, much less that he committed or was about to commit second degree battery against Nelson. *All of the evidence* supports Green using physical force only against Marshall. In recognition of these *undisputed facts*, the final paragraph of the instruction defined "battery in the second degree" to mean "Sedrick Green with the purpose of causing serious physical injury to Courtney Marshall causes serious physical injury to Courtney Marshall." An identically worded preamble is also stated in the justification instruction on the murder charges.

While reasonable minds might disagree about whether this preamble gave Nelson *too much latitude* in arguing his justification for shooting Green and Morant, any confusion it caused the jury would have inured to Nelson's benefit, *not prejudice*.

A person is not justified in using deadly physical force if he knows that the use of deadly physical force can be avoided with complete safety by retreating.  However, he is not required to retreat if he is in his dwelling or on the curtilage surrounding the person's dwelling and was not the original aggressor.

Stanley Nelson, in asserting this defense, is required only to raise a reasonable doubt in your minds. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to the guilt of Stanley Nelson, then you must find him not guilty.

* * * *

"Battery in the second degree" means Latravis Morant with the purpose of causing serious physical injury to Stanley Nelson causes serious physical injury to Stanley Nelson.

*Doc. 8-7 at 76-78.*[10]

---

[10] Nelson's habeas counsel now argues that, in addition to the one-word mistake in the final paragraph of this instruction defining "battery in the second degree," it also misidentifies the victim against whom Morant was committing or about to commit "battery in the second degree."  Despite having *no supporting evidence in the record*, Nelson now claims that, before he shot Morant, he believed Morant was "about to cause" physical injury to Marshall -- *not* Nelson -- and this was an additional justification for Nelson shooting Morant.

As previously explained, Mr. Cannon made a similar argument in the initial hearing on jury instructions and Judge Griffen *rejected it* because there was *no evidence* that, when Nelson shot Morant, he was committing or about to commit second degree battery on Marshall.  All of the testimony from witnesses described Morant standing and *watching Green*, who had Marshall pinned on the floor, repeatedly punching Marshall in the face.  Nothing in the record suggested Green needed *any help* from Morant to accomplish that task.

Blakely, Nelson's girlfriend, offered testimony that: (1) Morant *unsuccessfully* tried to punch *Nelson* shortly after the fight broke out between Marshall and Green; *and* (2) Morant yelled the Elaine battle cry "we E.T.O. up in here" just before Nelson shot and killed him.  Blakely's testimony was an awfully thin reed to support Nelson acting in self-defense when he shot Morant because he "reasonably believed" Morant was "about to commit" battery in the second degree *against him*.  Judge Griffen liberally construed Blakely's testimony as sufficient to allow Nelson to argue he shot and killed Morant in *self-defense*.  However, based on all of the undisputed testimony, it is clearly a bridge too far for Nelson to now argue that, when he shot Morant, he was also acting to defend *Marshall* because Nelson *guessed* that Morant might be "about to commit" second degree battery *on Marshall*.  Nothing in the record came close to suggesting that, when Nelson shot Morant, he "*reasonably believed*" Morant was "about to commit" second degree battery on Marshall. Accordingly, the definition of battery in the second degree contained in the

As previously explained, the AMCI 705 instruction on Nelson's justification for killing Morant "in self-defense" contains the same one-word mistake in the final paragraph of the instruction defining "battery in the second degree." In the context of that instruction, the jury was required to find "Nelson reasonably believed that Latravis Morant was . . . about to commit battery in the second degree" against him *and*, Morant's *purpose*, in doing so, was to "cause *serious* physical injury to Nelson" instead of for the correctly stated purpose of only "causing physical injury to Nelson." Witnesses described Morant as a large, muscular man who weighed around 300 pounds. *Doc. 8-2 at 110, 132, 180.* Assuming *arguendo* that the jury found "Nelson reasonably believed" Morant was "about to commit" second degree battery against him, the sheer size of Morant would have guided any reasonable juror to conclude that any attack launched by Morant against Nelson, would be for the purpose of causing "serious physical injury to Nelson." In other words, while many aspects of the evidence may have given the jury good reasons to *reject* Nelson's claim of self-defense in shooting and killing Morant, one of those reasons could *not* possibly have turned on whether, if Morant was "about to commit second degree battery on Nelson" his purpose might be to cause something *less than* "serious physical injury to Nelson."

---

justification instruction on Nelson's claim of self-defense on the murder charged did *not* misidentify *Nelson* as the *only victim* against whom Morant arguably was "about to commit" second degree battery on.

19

Likewise, Nelson makes the same argument that the one-word mistake in the definition of second degree battery in the AMCI 705 justification instruction on the first degree battery charge resulted in his unconstitutional conviction for shooting and wounding Green. The jury heard testimony from Green, who like his brother Morant, was a large, muscular man who weighed about 300 pounds. *Doc. 8-2 at 110, 124, 132, 180.* All of the evidence, including Green's testimony, establish that, after he threw Marshall on the floor, he used his weight to pin him down, and then, while using the full leverage of his position on top of Marshall, swung down and repeatedly hit Marshall with his fists.

After the fight, a police officer, who later testified at trial, took photographs of Marshall's face and body. These photographs were introduced into evidence and the police officer who took them testified the photographs accurately depicted Marshall's injuries. *Doc. 8-2 at 246–249.*

The photographs of Marshall's face show the following injuries: a cut to his left eyebrow; a swollen, black area around his left eye; redness on the surface of his left eyeball; a large distended and swollen area below his left eye running from the base of his nose to his left cheekbone; badly swollen upper and bottom lips, and a visible cut in the right corner of his lower lip; a black right eye and redness on the surface of his right eyeball; and there is a deep fingernail scratch behind his left ear. *Doc. 8-5 at 17–22.* Any reasonable juror reviewing these photographs immediately

would have seen that these injuries had caused the "protracted disfigurement" of Marshall's face; thereby constituting a "serious physical injury," as that phrase was correctly defined by Judge Griffen in a separate jury instruction.

Given these undisputed facts, no reasonable juror could reach any conclusion except that Green, in striking those blows, did so *with the purpose of causing* "*serious* physical injury" *to Marshall*; especially since the evidence established that Green's blows to Marshall's face did, in fact, cause him to suffer "serious physical injuries." Thus, in light of these undisputed facts, Nelson's argument that he suffered prejudice from the one word mistake in the AMCI 705 justification instruction on the first degree battery charge is implausible and unsupported by any evidence in the record.

Finally, all of the evidence indicates that Marshall started the fight by shoving Green in the face. Green responded by punching Marshall "pretty darn hard;" a blow that "stagger[ed] him." *Doc. 8-2 at 105 161, 179; Doc. 8-3 at 222*. After Adams tried to pull Marshall away, he again advanced toward Green. This time, Morant punched Marshall in the face and "dazed" him. [11] *Doc. 8-2 at 132, 181*. Green slammed Marshall to the ground, got on top of him, and began repeatedly punching

---

[11] Based on the testimony of several witnesses, as Adams tried to escort Marshall away from the area, Nelson removed a gun from the waistband of Marshall's pants. This was the weapon Nelson later used to shoot Green and Morant. *Doc. 8-3 at 106–107, 118–119, 129–130, 133, 161–162, 169*.

him in the face. As he did so, Nelson fired multiple gunshots at Green, before turning the on Morant.

This evidence strongly supported the *first* essential element of Nelson's justification defense – he "reasonably believed that Sedrick Green was committing . . . battery in the second degree, with force or violence" on Marshall. The problem for Nelson was the absence of any evidence to support the *second* element of his justification defense – "Stanley Nelson only used such force which he reasonably believed to be necessary." Before opening fire on Green, Nelson made no attempt to enlist the help of other onlookers to break up the fight, attempt to break up the fight himself, or brandish the gun so Green could see it and warn him he would shoot unless Green stopped his attack on Marshall. Instead, he suddenly opened fire on Green and *continued to fire shots at Green* even after he had ceased fighting and rolled Marshall on top of him to shield Green from the bullets Nelson was still firing. *Doc. 8-2 at 108, 164, 171; Doc. 8-3 at 201–202.*

Based on this undisputed testimony, Nelson unquestionably would have still been convicted of first degree battery, regardless of the one word mistake in the justification instruction's definition of "battery in the second degree." Accordingly, Nelson has failed to establish the prejudice required by *Strickland* to allow him to prevail on his ineffective assistance of counsel claim against Mr. Cannon for the same one word errors in both AMCI justification instructions.

**B.    Trial Counsel's Failure to Develop the Meaning of "E.T.O." (Claim 5)**

Mr. Cannon failed to elicit any testimony explaining that "E.T.O." is an acronym for "Elaine Taking Over" and was a shout or battle cry used by Morant, Green, and possibly others from the town of Elaine to signal their intention to fight.[12] Blakely, who was both Nelson's girlfriend and the mother of Green's children, testified that, just before Nelson began to shoot, Morant yelled "we E.T.O. up in here." *Doc. 8-3 at 223–224*. *Blakely* testified that she *believed* this shout by Morant meant he was about to attack Nelson. *Doc. 8-3 at 236.* Nelson argues that Mr. Cannon's failure to develop these facts through questioning Blakely and asking her if Nelson also knew the meaning of "E.T.O." and what it signified, constituted ineffective assistance of counsel.

Not every mistake in the course of a criminal trial rises to deficient performance. As the Supreme Court has repeatedly held, the Constitution only guarantees reasonably competent counsel, not perfect counsel. *Harrington v. Richter*, 562 U.S. 86, 110 ("[The Sixth Amendment] does not guarantee perfect representation, only a 'reasonably competent attorney.'" (quoting *Strickland*, 466 U.S. at 687)).

---

[12] Respondent argues this claim is also procedurally defaulted. Again, it is more efficient to proceed directly to the merits of this claim, rather than engage in the procedural default and *Martinez* analysis.

Here, Blakely testified that Morant yelled "E.T.O." then stepped toward Nelson. *Doc. 8-3 at 226.* It seems far-fetched, at best, to argue that Morant's supposed "fighting words," coupled with him taking a step in the direction of Nelson, constituted justification for Nelson's use of deadly force against him; especially when testimony indicated Nelson was standing next to an open door that led outside, which provided him with an easily available path of retreat.[13] *Doc. 8-2 at 118.* Accordingly, Nelson has established neither deficient performance by Mr. Cannon, nor prejudice related to Mr. Cannon's alleged ineffective assistance of counsel.

### C. The Arkansas Court of Appeals Reasonably Adjudicated the Ineffective Assistance of Counsel Claims Nelson Raised in his Rule 37 Appeal (Claims 6, 7, 8, and 9)

A federal habeas court is obligated to conduct a "limited and deferential review" of the state court's full merits adjudications of ineffective assistance of counsel claims. *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005). To obtain habeas relief, Nelson must prove that the Arkansas Court of Appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *see*

---

[13] The AMCI 705 self-defense instruction given by Judge Griffen made it clear that "a person is not justified in using deadly physical force if he knows that the use of deadly physical force can be avoided with complete safety by retreating."

*also Rompilla v. Beard*, 545 U.S. 374 (2005). *Furthermore*, in evaluating the state court's findings of fact, a federal habeas court must accept those findings as presumptively correct, and the habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)).

Thus, Nelson has the heavy evidentiary burden of proving, under *Strickland*, that the Arkansas Court of Appeals' rejection of his ineffective assistance of counsel claims was "unreasonable," *i.e.*, the Court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Richter*, 562 U.S. at 101-03 (2011).[14]

### 1. Nelson's Ineffective Assistance of Counsel Claim Based on Mr. Cannon's Failure to Introduce Medical Records of Marshall's Injuries (Claim 6)

Nelson argues that, because Green and Morant were unarmed, it was imperative for him to demonstrate, at the time he fired on them, they were causing or about to cause "serious physical injury to Marshall." *Doc. 1 at 46*.

---

[14] Meeting this high bar is a daunting task for a habeas petitioner because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted). For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland*'s high bar [for evaluating ineffective-assistance claims] is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 105 (citations omitted). The standards created by *Strickland* and § 2254(d) "are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.*

Marshall's medical records showed that he suffered a blowout fracture of the orbital socket of his left eye. *Doc. 9-4 at 20–66.* During the Rule 37 hearing, Nelson introduced testimony from an ophthalmologist, who opined that it required a very high level of force to create Marshall's injury. He also noted a myriad of serious side effects from the injury, ranging from a black eye to a detached retina.

Mr. Cannon made a *tactical decision* not to introduce those medical records. Instead, he opted to rely on the testimony of the police officer who took the photos of Marshall's injury that were introduced into evidence during the trial.[15] Nelson second guessing Mr. Cannon's tactical decision not to introduce the medical records and retain a medical expert to further investigate Marshall's injuries is not sufficient to demonstrate Mr. Cannon provided ineffective assistance of counsel.

The Arkansas Court of Appeals considered and rejected this ineffective assistance of counsel claim, on the merits:

> Nelson next argues that the circuit court erred in finding that counsel was not ineffective for failing to introduce medical evidence concerning Marshall's injuries. At the [Rule 37] evidentiary hearing, Dr. Robert Schroeder, an ophthalmologist, testified that Marshall sustained a blowout fracture to his left eye and that such injury could result in serious and permanent eye damage. Nelson asserts that if such medical evidence had been presented at trial concerning Marshall's

---

[15] In Judge Griffen's order denying Rule 37 relief, he noted Mr. Cannon's decision on whether to introduce the medical records was *tactical*. Judge Griffen also observed that the introduction of the medical records could have brought out the fact that, while Marshall's injuries were certainly serious, they were not life-threatening: "Even the doctor who testified during the Rule 37 hearing did not indicate that [Marshall's] injury . . . was life threatening." *Doc. 9-1 at 137*.

injuries, there was a reasonable probability that the jury would have accepted Nelson's justification defense and convicted him of a lesser charge.

We disagree. The decision whether to call particular witnesses is a matter of professional judgment, and even if another attorney would have chosen a different course, it is not grounds for postconviction relief on the basis of ineffective assistance of counsel. *Williams v. State*, 2016 Ark. 459, 504 S.W.3d 603. Counsel is allowed great leeway in making strategic and tactical decisions, particularly when deciding not to call a witness. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000).

In this case, at the evidentiary hearing, [Mr. Cannon] testified that he had obtained Marshall's medical records before trial, but he believed the records "downplayed" Marshall's injuries. Instead, he offered evidence of Marshall's injuries through a responding officer's testimony that she was concerned about Marshall's condition and that she called emergency medical services. He also introduced photos of the injuries. Given this testimony, we cannot say that counsel's approach was objectively unreasonable. Accordingly, we find no merit to this claim.

*Nelson*, 2018 Ark. App. at 8–9, 566 S.W.3d at 536–37. This conclusion by the Court was not unreasonable.

Accordingly, Nelson has failed to satisfy his burden of showing that, in rejecting this ineffective assistance of counsel claim, the Arkansas Court of Appeals unreasonably applied *Strickland*, or that its conclusion was based on an unreasonable determination of facts in light of the state court record. Thus, Claim 6 should be dismissed, with prejudice.

### 2. Nelson's Ineffective Assistance of Counsel Claim Based on Mr. Cannon Advising Him Not to Testify at Trial (Claim 7)

The Arkansas Court of Appeals considered and rejected, on the merits,

Nelson's claim that Mr. Cannon was ineffective for advising him not to testify:

> Nelson next argues that the circuit court erred in finding that his trial counsel was not ineffective for preventing him from testifying in his own defense. He recognizes that he has a prior conviction for unlawful discharge of a firearm and that his testimony would have opened the door for discussion of that conviction; however, he asserts that he was unaware that he had a choice whether to testify and that counsel should have prepared and advised him to testify when his justification defense was not established by other witnesses.
>
> The Supreme Court of the United States has held that a criminal defendant has a right to testify on his own behalf if he chooses to do so. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Counsel may only advise the accused in making the decision. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694; *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000) (per curiam). This court has consistently held, however, that the mere fact that a defendant did not testify is not, in and of itself, a basis for postconviction relief. *See, e.g., Dansby v. State*, 347 Ark. 674, 66 S.W.3d 585 (2002). Ordinarily, counsel's advice to the defendant not to testify is simply a matter of trial strategy. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228; *Chenowith*, 341 Ark. 722, 19 S.W.3d 612. The lack of success with trial tactics in obtaining an acquittal does not equate with ineffective assistance of counsel. *O'Rourke v. State*, 298 Ark. 144, 765 S.W.2d 916 (1989); *see also Fink v. State*, 280 Ark. 281, 658 S.W.2d 359 (1983). It is axiomatic that credibility determinations are within the province of the circuit court. *Chenowith*, 341 Ark. at 734, 19 S.W.3d at 618. Moreover, it is clear that an attorney's advice to a defendant on whether to testify and the defendant's decision to take or not take the stand are not grounds for postconviction relief predicated on ineffective assistance of counsel. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228.
>
> In this case, we hold that the circuit court did not err in finding that Nelson's counsel was not ineffective for advising Nelson not to testify.

> At the evidentiary hearing, counsel testified that he had advised Nelson throughout the proceedings not to testify due to the nature of his previous conviction but that Nelson made the final decision not to testify. Counsel explained that Nelson's prior conviction involved Nelson's firing a gun in front of a nightclub, hitting a woman in the arm and seriously injuring her. He noted that the woman was present at trial and prepared to testify about the incident. Counsel believed that he could not "lessen the sting" of the prior conviction to the jury; thus, he consistently advised Nelson not to take the stand. Even though Nelson maintains on appeal that he did not know he had the ultimate decision not to testify, the circuit court specifically found him not credible. Furthermore, even without Nelson's testimony, there was evidence presented that Green and Morant, the victims, had been in a physical altercation with Nelson's cousin, Marshall, at the time of the incident. Accordingly, we hold that Nelson has failed to establish that counsel was deficient as to this claim.

*Nelson*, 2018 Ark. App. at 6–8, 566 S.W.3d at 535–36. This conclusion by the Court was not unreasonable.[16]

Accordingly, Nelson has failed to satisfy his burden of showing that, in rejecting this ineffective assistance of counsel claim, the Arkansas Court of Appeals unreasonably applied *Strickland*, or that its conclusion was based on an unreasonable determination of facts in light of the state court record. Thus, Claim 7 should be dismissed, with prejudice.

---

[16] The Eighth Circuit has also held that an attorney's advice that a defendant should not testify due to prior convictions is not ineffective assistance of counsel. *Johnson v. Lockhart*, 921 F.2d 796, 800 (8th Cir. 1990) (due to an attorney's discretion to advise a client whether he should testify on his behalf, attorney's advice not to testify due, in part, to prior convictions may "at worst be called bad trial strategy, not constitutionally deficient legal performance"); *Drake v. Wyrick*, 640 F.2d 912, 915 (8th Cir. 1981) (trial attorney's advice that the defendant should not testify due, in part, to prior convictions was a matter of trial strategy and not a ground for finding ineffective assistance).

### 3. Nelson's Ineffective Assistance of Counsel Claim Based on Mr. Cannon's Failure to Elicit Testimony from Quante Blakely Regarding Green's Prior Acts of Domestic Violence Against Her (Claim 8)

Judge Griffen initially ruled that Mr. Cannon could elicit testimony from Blakely about Green's prior acts of domestic violence against her. However, at trial, he reversed his ruling after the prosecutor objected to that line of questioning. Nelson argues that Mr. Cannon "capitulation" to this ruling constituted ineffective assistance of counsel.

The Arkansas Court of Appeals considered and rejected, on the merits, this ineffective assistance of counsel claim:

> Nelson next argues that the circuit court erred in finding that counsel was not ineffective for failing to elicit evidence of Green's prior acts of domestic violence against Quante Blakely. Green was the battery victim, and Blakely had informed Nelson that Green had committed acts of domestic violence against her. Nelson asserts that his knowledge of Green's prior acts was relevant to his justification defense.
>
> Our review of the record shows that counsel tried to elicit testimony concerning Green's prior acts of domestic violence against Blakely. Specifically, during Blakely's testimony at trial, counsel questioned her about what she had told Nelson about Green. The State objected to the testimony concerning the domestic violence, and the court sustained the objection. Accordingly, counsel sought to introduce the domestic-violence evidence; thus, Nelson cannot establish a deficiency.

*Nelson*, 2018 Ark. App. at 9, 566 S.W.3d at 537.

This conclusion was not unreasonable. As the trial court pointed out in its order denying Rule 37 relief, "[w]hile Cannon did not elicit all prior violent acts of

Sedrick Green, Cannon did elicit testimony from Blakely that Nelson knew Sedrick Green stood accused of shooting someone" prior to Nelson shooting Green. *Doc. 9-1 at 138.* Because Judge Griffen permitted Mr. Cannon to introduce more damning testimony about Green having previously been accused of shooting someone, it strains credulity to believe testimony about Green's prior acts of domestic violence against Blakely (who was Nelson's girlfriend) would have made any difference to the jury in considering Nelson's "justification" for shooting Green.

Accordingly, Nelson has failed to satisfy his burden of showing that, in rejecting this ineffective assistance of counsel claim, the Arkansas Court of Appeals unreasonably applied *Strickland*, or that its conclusion was based on an unreasonable determination of facts in light of the state court record. Thus, Claim 8 should be dismissed, with prejudice.

### 4. Nelson's Ineffective Assistance of Counsel Claim Based on Mr. Cannon's Failure to Request A Nonmodel Jury Instruction on Imperfect Self-Defense (Claim 9)

The Arkansas Court of Appeals considered and rejected, on the merits, Nelson's claim that Cannon was ineffective for failing to request a nonmodel jury instruction on imperfect self-defense:

> Nelson lastly argues that the circuit court erred in finding that counsel was not ineffective for failing to request a nonmodel jury instruction on imperfect self-defense in accordance with Arkansas Code Annotated section 5-2-614 (Repl. 2013). In making his argument, he relies on *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). He asserts that *Harshaw* holds that a defendant is entitled to a nonmodel jury

instruction on imperfect self-defense pursuant to section 5-2-614 when there is evidence that the defendant recklessly or negligently formed the belief that force was necessary.

We disagree with Nelson and hold that the circuit court did not err in finding that counsel was not ineffective for failing to request a nonmodel jury instruction pursuant to section 5-2-614. Arkansas Code Annotated section 5-2-614 states as follows:

> (a) When a person believes that the use of physical force is necessary for any purpose justifying that use of physical force under this subchapter but the person is reckless or negligent either in forming that belief or in employing an excessive degree of physical force, the justification afforded by this subchapter is unavailable in a prosecution for an offense for which recklessness or negligence suffices to establish a culpable mental state.

> (b) When a person is justified under this subchapter in using physical force but he or she recklessly or negligently injures or creates a substantial risk of injury to a third party, the justification afforded by this subchapter is unavailable in a prosecution for the recklessness or negligence toward the third party.

In *Harshaw*, our supreme court held that it is reversible error to refuse to instruct on the lesser-included offense of manslaughter when there is the slightest evidence to support the instruction. *Id*.; *see Norris v. State*, 2010 Ark. 174, 368 S.W.3d 52. It does not hold that a defendant is entitled to a nonmodel jury instruction concerning section 5-2-614. *See Harshaw*, 344 Ark. 129, 39 S.W.2d 753. Thus, we cannot say that Nelson has established that counsel's failure to request a nonmodel jury instruction was objectively unreasonable. Accordingly, we hold that the circuit court did not err in finding that Nelson's claim had no merit.

*Nelson*, 2018 Ark. App. at 10-11, 566 S.W.3d at 537-538.

Under the applicable "doubly deferential standard," the Arkansas Court of

Appeals' rejection of this ineffective assistance of counsel claim was not an

unreasonable application of *Strickland*, or a conclusion which was based on an unreasonable determination of facts in light of the state court record. Accordingly, Claim 9 should be dismissed, with prejudice.

> **D.     Nelson's Claim That Mr. Cannon Provided Ineffective Assistance of Counsel By Failing to Move for Directed Verdict, Because the State Failed to Prove That the Crimes Qualified Under the Child Enhancement Statute, and, Mr. James Provided Ineffective Assistance of Counsel In the Rule 37 Proceeding, By Failing to Raise That Issue**

During the trial, Adams and Moore testified that: (1) children were sleeping in a bedroom of the residence at the time Nelson committed the two crimes of violence; and (2) Nelson arrived at the residence *after* the children were in bed and asleep. *Doc. 8-2 at 117, 193*. A hallway led to the bedroom in the back of the home where the children were sleeping. *Doc. 8-2 at 116*.

Nelson shot Green and Morant in the living room or family room area. There was no testimony that there were toys or similar items (circumstantial evidence) from which Nelson could have inferred that children were present elsewhere in the residence. *Williams v. State*, 2019 Ark. App. 152, 5, 573 S.W.3d 547, 550 (2019) (apart from direct evidence that the defendant knew children were in the residence, a jury may infer from the circumstances that a defendant had reason to know a child is present).

The *only evidence* the prosecution introduced to support the claim that Nelson "knew or should have known" children were in the residence when he shot Green

and Morant was the following hopelessly vague testimony from Adams, who was one of the onlookers to the dice game (*Doc. 8 at 27–29*):

> Q:  Now, at some point while you all were gambling and carrying on, did it – was there ever a discussion about that the kids were back there asleep?
>
> A:  Yes, sir.

*Doc. 8-2 at 117*.

There were at least six adult men and several adult women in the living room and family room area of the house. It is unclear how many were shooting dice and whether the players changed as the game continued. All of the partygoers were laughing and talking during this time. *Doc. 8-3 at 221*. The prosecutor did *not* ask Adams the *names* of those who "were gambling" when Adams mentioned "that the kids were back there asleep."  *Doc. 8-2 at 117-119*.  Other than conjecture and speculation, there is *nothing* in the record to support the prosecution's argument that Nelson "knew or should have known" that children were in the residence asleep when he shot Green and Morant.

Nevertheless, Judge Griffen allowed the prosecution to argue that Nelson's sentence should be increased under the child enhancement statute. Ark. Code. Ann. § 5-4-702.  The jury agreed with the State, and it recommended that Nelson's sentences on the first degree battery and second degree murder convictions be increased by *one year* under the child enhancement statute.  Ark. Code Ann. § 5-4-

702. Judge Griffen accepted the jury's recommendation, and Nelson's sentence was increased by one year on each conviction.

Under § 5-4-702, a "person who commits any of the following offenses may be subject to an enhanced sentence of an additional term of imprisonment of not less than one (1) year and not greater than ten (10) years if the offense is committed in the presence of a child[.]"[17] "In the presence of a child" is defined to mean in the physical presence of a child or knowing or having reason to know that a child is present and may see or hear an act. Ark. Code Ann. § 5-4-701.

While circumstantial evidence of the presence of children in a residence may support an inference of knowledge sufficient to support a conviction under the child enhancement, it must be "inconsistent with any other reasonable conclusion." *Dean v. State*, 2021 Ark. App. 182, 9 (2021). In *Dean*, the Court held that evidence was sufficient to support the imposition of a sentence, under the child enhancement statute, because children were awake watching a movie in the small apartment where the violence took place, and the defendant was familiar with the apartment and knew children lived there. In addition, blood from the defendant's battery of the children's mother was found throughout the apartment. *Id. at 11-12*. Here, there is *no*

---

[17] The listed offenses include both second degree murder and first degree battery. Ark. Code Ann. § 5-4-702(a)(3), (5).

*evidence*, circumstantial or otherwise, suggesting Nelson knew or should have known there were children in the house.

Viewed in a light most favorable to the State, the testimony of Adams required to jury to engage in speculation and conjecture to decide if Nelson "knew or should have known" there were children in the residence when he shot Green and Morant. Thus, the State failed to sustain its burden of proving beyond a reasonable doubt that Nelson's crimes qualified for the child enhancement.

Mr. Cannon did not move for directed verdict on this issue. *Doc. 8-3 at 204-218, 246-256.* If he had made such a motion, as he was obligated to do, there is a reasonable probability that Judge Griffen would have granted it, and, if not, his decision likely would have been reversed on appeal. By failing to make this motion, Mr. Cannon waived the issue on direct appeal, and committed constitutionally ineffective assistance of counsel.

Similarly, in the initial Rule 37 proceeding, Nelson's retained counsel, Mr. James, failed to assert an ineffective assistance of counsel claim based on Mr. Cannon's failure to move for directed verdict based on the lack of evidence to support the child enhancement. As a result, Nelson's claim is now procedurally defaulted, unless it can be saved under the exception created by the Court in *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

Under the *Martinez* exception, a procedural default, like the one committed by Mr. James in the Rule 37 proceeding, will not bar a federal habeas court from hearing the defaulted ineffective assistance of trial counsel claim, as long as the defaulted claim is "substantial." *Id.* at 17. A substantial claim is defined to mean a claim that has "some merit." *Id.* at 14.

 Mr. Cannon's failure to move for directed verdict was a "substantial claim" of ineffective assistance of trial counsel because the claim clearly had merit. For the same reason, Mr. James' failure to raise that claim in Nelson's Rule 37 Petition also constituted ineffective assistance of counsel. Accordingly, the *Martinez* exception applies and saves this otherwise procedurally defaulted claim.

To prevail on this ineffective assistance of trial counsel claim, Nelson must prove both prongs of *Strickland*: (1) Mr. Cannon's representation fell below an objective standard of reasonableness; and (2) but for Mr. Cannon's error, there is a reasonable probability the result of the criminal proceeding on the child enhancement would have been different.

After carefully reviewing the record, there is no need for an evidentiary hearing to resolve the merits of this claim.  First, the record clearly establishes that the State failed to present the evidence necessary to trigger the child enhancement. Second, Mr. Cannon's error fell below an objective standard of reasonableness and constituted constitutionally ineffective assistance of counsel; *i.e.* but for Mr.

Cannon's error, Nelson would not have been sentenced to a total of two additional years in prison.

Accordingly, the Court recommends granting habeas relief only as to Claim 10, and reversing the one-year enhancements Nelson received on the first degree battery conviction and the second degree murder conviction under Ark. Code Ann. § 5-4-702.

## IV.    Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Nelson's 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus, *Doc. 1*, be GRANTED in part, and DENIED in part.

2.    The Court should DENY Nelson's first nine claims that: (1) Mr. Cannon was ineffective for stipulating to an erroneous battery justification instruction containing the wrong elements of second degree battery; (2) Mr. Cannon was ineffective for stipulating to an erroneous murder justification instruction containing the wrong elements of second degree battery; (3) Mr. Cannon was ineffective for stipulating to an erroneous murder justification instruction identifying the wrong victim of the second degree battery; (4) Mr. Cannon was ineffective for stipulating to an erroneous murder justification instruction which failed to state that Morant and Green were acting in concert in committing second degree battery; (5) Mr. Cannon was ineffective for not eliciting testimony to explain the significance of

"ETO"; (6) Mr. Cannon was ineffective for failing to introduce medical records and testimony to establish the severity of Marshall's injury; (7) Mr. Cannon was ineffective for improperly advising Nelson not to testify; (8) Mr. Cannon was ineffective for failing to introduce testimony that Nelson was aware Green had committed acts of domestic violence; and (9) Mr. Cannon was ineffective for failing to request an imperfect self-defense jury instruction.

3.    The Court should GRANT habeas relief on Nelson's final claim, that Mr. Cannon was constitutionally ineffective for failing to move for directed verdict because there was no evidence to support the enhancement of his sentences under Ark. Code Ann. § 5-4-702; and *reverse* Nelson's enhanced sentence on *both* his first degree battery and second degree murder convictions.

DATED this 25th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE